IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES,

    Plaintiff,

    v.

TERRANCE WILLS,

    Defendant,

Case No. 19-40013-03-DDC

**MEMORANDUM AND ORDER**

On February 19, 2019, Mr. Wills appeared for an initial appearance and waived his right to a detention hearing. He has been in custody since. Pursuant to a plea agreement with the government, on October 21 he appeared before the court and pleaded guilty to an information charging him with possession with the intent to distribute 100 grams or more of heroin. His sentencing is scheduled for May 18, 2020. This matter is now before the court on his Motion for Temporary Release. (ECF Nos. 116.) He seeks release pursuant to 18 U.S.C. § 3142(i) or § 3145(c) because he contends he is at an increased risk of contracting the virus that causes coronavirus disease ("COVID-19") while he is incarcerated and because his asthma increases his risk of suffering severe illness if he were to become infected. The government opposes the motion.

While COVID-19 poses significant risks, including to those incarcerated, releasing Mr. Wills would pose its own risks. He is a flight risk and a risk of danger to the community because of his lengthy criminal history, his record of failing to comply with conditions of release, and his history of failing to appear. Moreover, Mr. Wills has not demonstrated that his asthma rises to the level of an underlying medical condition that puts him at an increased risk of suffering severe complications. For these reasons and others, as explained below, his motion is denied.

**I.      BACKGROUND**

On February 19, 2019, Mr. Wills appeared before the court for a first appearance on a two-count criminal complaint alleging that he and two co-defendants conspired and possessed with the intent to distribute one kilogram or more of heroin. (ECF Nos. 1 and 13.) Mr. Wills waived his right to a detention hearing and has remained in custody ever since. (ECF No. 15.) On February 27, a grand jury indicted Mr. Wills and his co-defendants on a charge of possession with the intent to distribute a controlled substance. Mr. Wills subsequently entered into a plea agreement with the government whereby he pleaded guilty to possession with the intent to distribute 100 grams or more of heroin, as charged in a subsequent information, in exchange for the government filing the information with a charge that contains a shorter mandatory-minimum sentence than the charge in the original indictment. (ECF No. 91.) On October 21, Mr. Wills petitioned to enter a guilty plea, which Judge Crabtree accepted while deferring approval of the parties' plea agreement until the time of sentencing. (ECF Nos. 86 and 90, at 7).

Mr. Wills now seeks release because he argues he is at both an increased risk of contracting COVID-19 at the Shawnee County Adult Detention Center ("SCADC") and his asthma puts him at an increased risk of suffering severe illness if he were to become infected. He proposes that the court release him to live with his wife and two daughters in Kansas City, Kansas. He states that the family's contact with others would be limited. His 18-year-old daughter is the only family member to leave the house regularly. She works part-time at a local Pizza Hut, where in-store dining is no longer permitted. He also states that the residence is close to the University of Kansas Medical Center and Providence Medical Center and that he could seek care at one of those hospitals if he contracts the virus and becomes seriously ill.

Mr. Wills initially moved for release under 18 U.S.C. § 3142(i), which provides for pretrial release for a "compelling reason." The court gave the parties an opportunity to submit supplemental briefing in light of another recent order issued by the undersigned that found that § 3142(i) does not apply to defendants who have pleaded guilty and are awaiting sentencing. Mr. Wills' supplemental brief still argues that § 3142(i) applies, but, in the alternative, he requests release under 18 U.S.C. § 3145(c) for "exceptional reasons." Because § 3145(c) is the appropriate procedural vehicle for a post-plea defendant to seek release, the court first addresses release under this statute before addressing release under § 3142(i).

## II.    THE "EXCEPTIONAL REASONS" PROVISION OF § 3145(c)

In 1990, Congress enacted the Mandatory Detention for Offenders Convicted of Serious Crimes Act as an amendment to the Bail Reform Act to require detention of defendants found guilty (or pleading guilty) to offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C) pending their sentencing hearings. 18 U.S.C. § 3143(a)(2). The crime to which Mr. Wills pleaded guilty fits within § 3142(f)(1)(C). Therefore, he is subject to mandatory detention under § 3143(a)(2).

Mr. Wills moves for release prior to sentencing pursuant to 18 U.S.C. § 3145(c). That statute provides in relevant part:

> A person subject to detention pursuant to section 3143(a)(2) . . . and who meets the conditions of release set forth in section 3143(a)(1) [governing release or detention pending sentencing] or (b)(1) [governing release or detention pending appeal], may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

§ 3145(c). For Mr. Wills to obtain release under this section, he must meet both conditions set forth in § 3143(a)(1), *and* he must make "a clear showing of exceptional reasons why his detention would not be appropriate." *United States v. Kinslow*, 105 F.3d 555, 557 (10th Cir. 1997). Under

3

§ 3143(a)(1), he must show "by clear and convincing evidence, that he [is] not [1] 'likely to flee or [2] pose a danger to the safety of any other person or the community if released.'" *Id.* (quoting 18 U.S.C. § 3143(a)(1)).

The court first considers whether Mr. Wills has established by clear and convincing evidence that he meets both conditions set forth in § 3143(a)(1). Although the court is not required to consider the factors set out in 18 U.S.C. § 3142(g) in this context, some courts have found those pretrial detention factors helpful to the analysis. *See, e.g., United States v. Eubanks*, No. 17-20184, 2020 WL 1814090, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017). They include the following: (1) the nature and circumstance of the offense charged, including whether it involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including past criminal history, record of appearing at court proceedings, and whether the defendant has a history of complying with conditions of release, among other things; and (4) whether the defendant's release would pose a danger to any person or the community.

Here, Mr. Wills argues he is not a flight risk and does not pose a danger because he is a longtime Kansas resident with ties to the community who is requesting that he be released on home detention to his wife's residence in Kansas City, Kansas. (ECF No. 121, at 5.) He argues he has every incentive not to flee and to comply with conditions of release because, if the court accepts the parties' plea agreement, Mr. Wills will be sentenced for a crime carrying half the mandatory minimum sentence as the crime originally charged. (*Id.*) Fleeing would constitute a breach of the plea agreement, and Mr. Wills could face a lengthier sentence.

Although Mr. Wills now states that he understands the importance of complying with conditions of release and appearing for court, the § 3142(g) factors weigh heavily against release.

4

Mr. Wills has a lengthy criminal history, beginning when he was a juvenile and extending to his most recent arrest, including a conviction for attempted aggravated battery. As the government notes, he has two recent convictions for aggravated failure to appear. (ECF No. 122, at 4.) He was convicted of attempted aggravated robbery, sentenced to prison, and had his parole revoked four times during the life of the case. (*Id.*) Since then, he has been convicted of multiple forgeries, trespasses, burglary, and attempted theft. (*Id.*) Notably, he was on supervision when law enforcement arrested him in conjunction with this case. (*Id.*) He self-reported to pretrial services that he was a "serial gambler," and he lacks any recent history of stable employment. He has also pleaded guilty to a serious charge involving a controlled substance. Although Mr. Wills now argues that he is motivated to comply with conditions of release so that he does not place his plea agreement in jeopardy, his past conduct shows a lack of compliance with conditions and serial criminal activity. Thus, the prospect of incarceration does not appear to deter Mr. Wills, and the fact that he has entered into a plea agreement and has strong ties to the community does not overcome that the § 3142(g) factors overwhelmingly show that he is both a flight risk and a danger to the community.

Because Mr. Wills has not established by clear and convincing evidence that he meets the conditions set forth in § 3143(a)(1), the court denies his request for release under § 3145(c). *See United States v. Dahda*, 772 F. App'x 730, 732–33 (10th Cir. 2019) (finding that a defendant did not carry his burden to establish by clear and convincing evidence that he met the conditions for release under § 3143(a)(1) where defendant offered no evidence and finding that the motion would fail on this basis alone). The court need not and will not proceed to analyze whether his COVID-19 concerns constitute "exceptional reasons" warranting release.

### III. "COMPELLING REASON" STANDARD UNDER § 3142(i)

Mr. Wills initially moved for release under 18 U.S.C. § 3142(i) of the Bail Reform Act, and he contends this provision more appropriately governs. It provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason*.

§ 3142(i) (emphasis added).

#### A.     § 3142(i) Does Not Apply to Individuals Seeking Release Pending Sentencing

In *United States v. Duncan*, the undersigned held that § 3142(i) apples to defendants seeking pretrial release, not to defendants who have pleaded guilty and are awaiting sentencing. *United States v. Duncan*, No. 18-40030-01-HLT, 2020 WL 1700355, at *5 (D. Kan. Apr. 8, 2020) (finding "§ 3142(i) only applies to a person seeking release pending trial"). Most courts considering the issue have also concluded that § 3142(i) does not apply in the post-guilty-plea context. *See id.* (collecting cases); *see also United States v. Wiggins*, No. 19-CR-258 (KBJ), 2020 WL 1821122, at *7 (D.D.C. Apr. 10, 2020) (reaching the same conclusion); *United States v. Massey-Lovejoy*, No. 1:19-CR-184-8, 2020 WL 1703737, at *1 (N.D. Ohio Apr. 8, 2020) (same); *United States v. Melendez-Perez*, No. 1:19-CR-184-2, 2020 WL 1814150, at *1 (N.D. Ohio Apr. 8, 2020) (same); *United States v. Morris*, No. 3:19-CR-573-B, 2020 WL 1694301, at *2 (N.D. Tex. Apr. 6, 2020) (same).

Rather, 18 U.S.C. §3143 governs release or detention of a defendant pending sentencing or appeal. The statute requires detention of a defendant "who has been found guilty" and "is awaiting imposition of or execution of sentence," absent certain narrow circumstances. 18 U.S.C. § 3143. The statute also provides for mandatory detention for defendants "found guilty" of

offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), pending their sentencing hearings.  18 U.S.C. § 3143(a)(2).  The crime to which Mr. Wills has pleaded guilty fits within § 3142(f)(1)(C), and therefore he is subject to mandatory detention under § 3143(a)(2).  Although a jury did not convict Mr. Wills, "section 3143 unequivocally applies to all persons who have been 'found guilty' of certain enumerated offenses, without making any distinction between persons who were convicted after trial and persons who pleaded guilty."  *United States v. Fisher*, 587 F. Supp. 2d 635, 636 (S.D.N.Y. 2008).  And "[p]ending sentencing, the presumption is that a defendant will be detained."  *United States v. Ingle*, 454 F.3d 1082, 1084 (10th Cir. 2006).

Mr. Wills argues that §3143 does not apply to him because he has not yet been "found guilty" within the meaning of the statute.  He reasons that FED. R. CRIM. P. 11 binds the court's disposition of the case if the court accepts the parties' plea agreement, but, if the court rejects the plea agreement, Mr. Wills' plea can and will be withdrawn.  (ECF No. 121, at 2.)  He argues that Judge Crabtree "provisionally" or "conditionally" accepted Mr. Wills' plea, subject to approval of the parties' plea agreement.  He therefore reasons that, because Judge Crabtree only conditionally accepted the plea, Mr. Wills' guilt is likewise conditional.  In other words, because adjudication of Mr. Wills' guilt is incomplete, he has not been "found guilty" within the meaning of § 3143.

This recitation of the case is not entirely accurate.  Judge Crabtree ordered "that the defendant's plea of 'GUILTY' be accepted and entered as prayed for in the petition and as recommended in the certificate of his/her lawyer."  (ECF No. 90, at 7.)  The minute sheet from the hearing shows that Judge Crabtree deferred approval of the parties' *plea agreement* until sentencing. (ECF No. 86, at 1.)  So, Mr. Wills is correct in that Rule 11 provides a mechanism to withdraw a guilty plea if the district judge does not accept the plea agreement, but it is not accurate to characterize his guilty plea as "conditionally accepted" or subject to procedural safeguards

7

beyond what Rule 11 provides.  *See*  FED. R. CRIM. 11(c)(5)(B) (requiring the court to advise the defendant that it is not required to follow the plea agreement and give the defendant an opportunity to withdraw it); s*ee also* FED. R. CRIM. 11(d)(2)(A) (allowing a defendant to withdraw a guilty plea after the court accepts the plea but before it imposes the sentence if the court rejects the plea agreement); *see also* (ECF No. 91 (providing that the defendant may withdraw the plea if the court does not accept the plea agreement but that if the court accepts the plea agreement, "the defendant will not be permitted to withdraw his guilty plea")).

Courts determining that a guilty plea constitutes being "found guilty" within the meaning of § 3143 focus on the guilty plea itself, not the court's acceptance of the plea agreement.  *See, e.g., United States v. McGrann*, 927 F. Supp. 2d 279, 285 (E.D. Va. 2013) (finding that a defendant's guilty plea before a magistrate judge was sufficient to trigger mandatory detention under § 3143(a)(2) even though the district judge had not yet "found" the defendant guilty and ordered his detention); *United States v. Cornelius*, No. 606CR67ORL28JGG, 2006 WL 1360923, at *1 (M.D. Fla. May 17, 2006) (same).  One court concluded § 3143 applies to a defendant at the time he or she pleads guilty, even when the district judge defers acceptance of the guilty plea until the date of sentencing.  *See United States v. Bryant*, 895 F. Supp. 218, 220 (N.D. Ind. 1995) (noting that "the entry of a judgment of conviction at sentencing appears to be nothing more than a mere formality" and that no party had suggested any reason why the district judge would not accept the plea agreement or why the defendant would attempt to withdraw his guilty plea).  And, as another court reasoned, if a defendant pleading guilty did not qualify as "a person who has been found guilty" and who "is awaiting imposition" of a sentence, the mandatory-detention provision of § 3143(a)(2) would be rendered meaningless for defendants entering into plea agreements.  *United States v. Luisa*, 266 F. Supp. 2d 440, 446 (W.D.N.C. 2003).

Mr. Wills has not presented any case law adopting his interpretation of § 3143 or any case law in which a court found that § 3142(i) more appropriately applies to motions for release brought by post-plea defendants awaiting final disposition of their cases.  Rather, Mr. Wills has pleaded guilty, and no party has suggested any reason why the district judge would not accept the plea agreement.  Until such time that the district judge rejects the plea agreement and/or allows Mr. Wills to withdraw his guilty plea, he stands convicted and awaits sentencing.  Therefore, § 3142(i) does not apply.

### B. Mr. Wills is Not Entitled to Relief Under § 3142(i)

Even if the court were to consider Mr. Wills' request for release under § 3142(i), the court would still deny the motion.  The parties have addressed the factors this court evaluates in considering motions for release pursuant to § 3142(i) based on circumstances relating to COVID-19.  *See United States v. Clark*, --- F. Supp. 3d ---, 2020 WL 1446895 (D. Kan. 2020).  Those factors include:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* at *3. The factors are non-exhaustive and are not necessarily weighted equally, but rather guide the court's determination as to whether the defendant has demonstrated compelling reasons that temporary release is necessary. *Id.*

### 1. Grounds for Mr. Wills' Pretrial Detention

Although Mr. Wills waived his detention hearing, ample grounds support detention, as discussed above. Mr. Wills is both a flight risk and poses a danger to the community. This factor weighs heavily against release.

### 2.     The Specificity of the Defendant's Stated COVID-19 Concerns

Mr. Wills' COVID-19 concerns fall into two categories.  First, he contends he is at an increased risk of contracting COVID-19 both generally because inmates housed in closed quarters are at an increased risk of rampant infection and specifically in that he claims SCADC has insufficient COVID-19 preventative measures.  Second, Mr. Wills contends that he is at an increased risk of suffering severe illness from COVID-19 because he has asthma.

In recent cases, the undersigned has addressed substantially similar arguments regarding the spread of COVID-19 in prison facilities and concluded that those living in close quarters, including inmates, face increased risks of contamination.  *See, e,g., Duncan*, 2020 WL 1700355, at *7.  Mr. Wills also makes arguments more specific to SCADC, contending its preventative measures are insufficient to counter the spread of a contagious disease.  The court has addressed similar concerns about Leavenworth Detention Center ("LDC"), concluding that the facility appeared to be implementing reasonable precautionary measures that are not inconsistent with the challenges that society as a whole is facing.  *See id.* (finding that concerns about lack of access to soap, hand sanitizer, and personal protective equipment were valid but noting nationwide shortages of many of these items, too).  Similarly, SCADC is taking many of the same preventative measures as LDC, and the facility currently has no confirmed case of COVID-19.  (ECF No. 116, at 7 (quoting an email from a Shawnee County Department of Corrections official detailing the department's protocol.))[1]  The undersigned has considered these arguments but will not rehash them here in the interest of brevity.

---

[1] Mr. Wills also states that he observed a newly admitted inmate being rushed out of his cell, followed by jail staff spraying down the cell in an attempt to disinfect the area.  The court has considered these circumstances, but on this record, it is entirely speculative whether the inmate had COVID-19.  If anything, it demonstrates the SCADF is being proactive in sanitizing.

10

Instead, the court focuses on the argument more specific to Mr. Wills—that his asthma puts him at an increased risk of suffering severe illness if he were to contract COVID-19. As Mr. Wills notes, the Centers for Disease Control and Prevention ("CDC") has recognized that individuals with "moderate to severe asthma may be at higher risk of getting very sick with COVID-19."[2] Mr. Wills states that he has asthma, as confirmed by his jail records, and therefore he characterizes himself as being in a high-risk group. (ECF No. 116, at 3; ECF No. 116-1.) But neither Mr. Wills' briefs nor his records indicate whether Mr. Wills suffers from asthma that a medical provider has categorized as "moderate to severe." For example, Mr. Wills does not specify whether he is prescribed or uses an inhaler or other asthma-related medications. He provides no details about his condition such that the court could find that his asthma is moderate to severe, as opposed to mild. To be clear, it is possible that Mr. Wills' asthma is moderate or severe, but the court cannot make that conclusion on this record. So, while Mr. Wills and all other inmates face a potential increased risk of transmission, Mr. Wills has not established that he suffers from "moderate to severe" asthma that would put him in a recognized higher-risk category based on CDC guidance.

### 3. The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate the Defendant's Overall COVID-19 risks

Defendants who seek release based on COVID-19 concerns must propose a release plan tailored to mitigate overall risks, not exacerbate them. *See Clark*, 2020 WL 1446895, at \*6 (D. Kan. Mar. 25, 2020). Mr. Wills proposes that he be released to his wife's home in Kansas City, Kansas. According to Mr. Wills, the family practices social distancing, and his 18-year-old daughter is the only family member who leaves the house regularly to work. The government

---

[2] CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited Apr. 14, 2020).

11

argues that it is speculative whether the release plan would mitigate Mr. Wills' risk of contracting COVID-19, with no known cases in the facility housing Mr. Wills whereas there are many known cases in the Kansas City, Kansas area. The court finds that this factor neither weighs in favor of nor against release.

### 4. The Likelihood that the Defendant's Proposed Release Plan Would Increase COVID-19 Risks to Others

In considering a defendant's proposed release plan, the court must also be mindful of whether the plan would put others at an increased risk of contracting COVID-19. This factor is closely related to the first in that a "defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. While Mr. Wills has proposed a release plan that would not put himself or his family at an increased risk of infection, the likelihood that he would violate conditions of release or continue to engage in criminal activity poses risks to others who would come into contact with Mr. Wills under those circumstances and, if he were taken back into custody as a result, he would pose an increased risk to other inmates. Therefore, this factor weighs against release.

On balance, the above factors weigh against finding that Mr. Wills has demonstrated a compelling reason that his release is necessary under § 3142(i). Therefore, even if § 3142(i) applied here, the court would still deny his request for release under the statute.

## IV. CONCLUSION

Mr. Wills has not shown by clear and convincing evidence that he meets the conditions of release § 3143(a)(1)—a threshold showing before the court even proceeds to the "exceptional circumstances" analysis under § 3145(c). Furthermore, § 3142(i) does not apply here and, even if

it did, the court would not find that Mr. Wills has shown a compelling reason that his release is necessary. For these reasons, the court denies his motion.

**IT IS THEREFORE ORDERED** that Defendant Terrance Wills' Motion for Temporary Release (ECF No. 116) is denied.

**IT IS SO ORDERED.**

Dated April 15, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
